**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BEST PAYPHONES, INC., NORTHEASTERN TELECOM, INC., and PARAMOUNT FINANCIAL RECOVERY, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> VERIZON NEW YORK, INC. and MANHATTAN TELECOMMUNICATIONS CORPORATION D/B/A METTEL, <br><br> Defendants. | Case No. 1:23-cv-04935-JLR |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SANCTIONS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 11**

# TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................. 2

    A.    The Parties and Services at Issue ........................................................... 2

    B.    The Telecommunications Act of 1996 and the FCC's Payphone Orders ............... 3

    C.    Prior Challenges to Verizon's Payphone Rates ....................................... 4

    D.    Plaintiffs File This Lawsuit ................................................................... 8

STANDARD OF REVIEW ........................................................................................... 10

ARGUMENT ................................................................................................................ 11

I.    The Claims Against Verizon Are Time-Barred ...................................... 11

II.    Plaintiffs' FCC Petition Does Not Provide a Basis Under Rule 11 for This Complaint Against Verizon or MetTel ...................................................... 15

III.    The Court Should Impose Sanctions for Plaintiffs Persisting with This Frivolous Complaint ............................................................................... 18

CONCLUSION ............................................................................................................. 19

# TABLE OF AUTHORITIES

Page

**CASES**

*ACE Sec. Corp. v. DB Structured Prods., Inc.*, 25 N.Y.3d 581 (2015) .........................................15

*APCC Servs., Inc. v. Sprint Comm'ncs Co.*, 418 F.3d 1238 (D.C. Cir. 2005),
    *cert. granted, vacated, and remanded*, 127 S. Ct. 2094 (2007).........................................13

*Banyan v. Sikorski*, 2021 WL 1163653 (S.D.N.Y. Mar. 26, 2021)................................................19

*Bar-Mashiah v. Inc. Vill. of Hewlett Bay Park*, 2019 WL 4247593
    (E.D.N.Y. Sept. 6, 2019) ........................................................................................................18

*Best Payphone, Inc. v. Pub. Serv. Comm'n*:

    2019 WL 11276711 (N.Y. Sup. Ct., Albany Cnty. July 24, 2019) .......................................7

    37 N.Y.3d 914 (2021)............................................................................................................8

    192 A.D.3d 1416 (3d Dep't 2021) ......................................................................................7

    142 S. Ct. 2815 (2022)........................................................................................................8

*Carolyn M. Machonis, O.T., PLLC v. Universal Surv. Ctr., Inc.*, 2020 WL 9815183
    (S.D.N.Y. Feb. 21, 2020) .....................................................................................................17

*Charles Equip. Energy Sys. v. Innio Waukesha Gas Engines, Inc.*,
    2023 WL 2346337 (S.D.N.Y. Mar. 3, 2023) .....................................................................18

*Commc'ns Mgmt. Servs., LLC v. Qwest Corp.*, 726 F. App'x 538 (9th Cir. 2018) .......................12

*Commc'ns Vending Corp. of Arizona, Inc. v. FCC*, 365 F.3d 1064 (D.C. Cir. 2004) ...................12

*Corsello v. Verizon New York, Inc.*, 18 N.Y.3d 777 (2012) ...........................................................15

*Davel Commc'ns, Inc. v. Qwest Corp.*, 460 F.3d 1075 (9th Cir. 2006) ...................................4, 16

*Davis v. Kosinsky*, 217 F. Supp. 3d 706 (S.D.N.Y. 2016), *aff'd*, 689 F. App'x 665
    (2d Cir. 2019)........................................................................................................................18

*de la Fuente v. DCI Telecomms., Inc.*, 259 F. Supp. 2d 250 (S.D.N.Y. 2003) .............................18

*Edmonds v. Seavey*, 2009 WL 4404815 (S.D.N.Y. Dec. 2, 2009).....................................10, 11, 18

*Illinois Pub. Telecomms. Ass'n v. FCC*, 752 F.3d 1018 (D.C. Cir. 2014) ........................................6

*Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649 (S.D.N.Y. 1996), *aff'd*,
    113 F.3d 1229 (2d Cir. 1997) ................................................................10, 18

*Kaufman v. Cohen*, 307 A.D.2d 113 (1st Dep't 2003) ....................................................14

*Kerchner v. Obama*, 612 F.3d 204 (3d Cir. 2010) ........................................................18

*King v. Whitmer*, 71 F.4th 511, 528 (6th Cir. 2023) ....................................................19

*Levy v. Aaron Faber, Inc.*, 148 F.R.D. 114 (S.D.N.Y. 1993) ...........................................18

*Litovich v. Bank of Am. Corp.*, 568 F. Supp. 3d 398 (S.D.N.Y. 2021) ...............................13

*NASDAQ Market-Makers Antitrust Litig., In re*, 187 F.R.D. 124 (S.D.N.Y. 1999).....................19

*Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682 (2d Cir. 2013) ...............................17

*Norris v. Grosvenor Mktg. Ltd.*, 803 F.2d 1281 (2d Cir. 1986).......................................18

*Nw. Pub. Commc'ns Counsel v. Qwest Corp.*:

    2010 WL 4260341 (D. Or. Oct. 25, 2010), *aff'd*, 538 F. App'x 822
    (9th Cir. 2013)....................................................................................12, 16

    538 F. App'x 822 (9th Cir. 2013) ...........................................................16

*N.Y. Civil Liberties Union v. Grandeau*, 528 F.3d 122 (2d Cir. 2008)................................18

*Payphone Ass'n of New York, Inc. v. Pub. Serv. Comm'n of State of New York*,
    5 A.D.3d 960 (3d Dep't 2004) ...................................................................5

*Porr v. NYNEX Corp.*, 230 A.D.2d 564 (2d Dep't 1997) .............................................14, 15

*Shak v. JPMorgan Chase & Co.*, 156 F. Supp. 3d 462 (S.D.N.Y. 2016) ................................14

*Sharbat v. Iovance Biotherapeutics, Inc.*, 2023 WL 34377 (S.D.N.Y. Jan. 4, 2023)...................18

*Sprint Commc'ns Co. v. FCC*, 76 F.3d 1221 (D.C. Cir. 1996).........................................16

*Texas v. United States*, 523 U.S. 296 (1998)............................................................17

*Town of Oyster Bay v. Lizza Indus., Inc.*, 22 N.Y.3d 1024 (2013) ..................................15

## STATUTES AND RULES

5 U.S.C. § 554(3) ..............................................................................................17

15 U.S.C. § 2 ...................................................................................................13

15 U.S.C. § 15b ...............................................................................................13

47 U.S.C. §§ 206-207 ......................................................................................12

47 U.S.C. § 276(a) ...........................................................................................13

47 U.S.C. § 276(a)(2) .........................................................................................3

47 U.S.C. § 276(b)(1)(C) ....................................................................................3

47 U.S.C. § 415(b) ...........................................................................................12

47 U.S.C. § 415(f) ............................................................................................13

N.Y. C.P.L.R. § 203(a) ....................................................................................14

N.Y. C.P.L.R. § 213(1) ....................................................................................14

N.Y. C.P.L.R. § 213(2) ....................................................................................15

N.Y. C.P.L.R. § 213(8) ....................................................................................14

N.Y. C.P.L.R. § 214(2) ....................................................................................15

Fed. R. Civ. P. 11 ............................................................1, 2, 10, 11, 15, 18, 19

Fed. R. Civ. P. 11(b) ........................................................................................10

Fed. R. Civ. P. 11(c)(2) ....................................................................................10

Fed. R. Civ. P. 11(c)(4) ....................................................................................19

47 C.F.R. § 1.2 .................................................................................................17

## FEDERAL ADMINISTRATIVE DECISIONS

Declaratory Ruling and Order, *Implementation of the Pay Telephone
   Reclassification and Compensation Provisions of the Telecommunications
   Act of 1996*, 28 FCC Rcd 2615 (2013) ("*FCC Declaratory Ruling*") .................6, 7, 16, 17

Order, *Implementation of the Pay Telephone Reclassification and Compensation Provisions of the Telecommunications Act of 1996*, 12 FCC Rcd 21370 (1997) ("*Waiver Order*") ..................................................................................4

Order on Reconsideration, *Implementation of the Pay Telephone Reclassification and Compensation Provisions of the Telecommunications Act of 1996*, 11 FCC Rcd 21233 (1996) ("*1996 Reconsideration Order*") ..........................................3, 4

Report and Order, *Implementation of the Pay Telephone Reclassification and Compensation Provisions of the Telecommunications Act of 1996*, 11 FCC Rcd 20541 (1996) ..................................................................................3

**STATE ADMINSTRATIVE DECISIONS**

Formal Complaint, *Formal Complaint of Phone Management Enterprises, Inc. and Other Pay Telephone Operators Against Verizon New York for Refunds Relating to Unlawful Underlying Payphone Service Rates*, Case 03-C-0428 (filed N.Y. Pub. Serv. Comm'n Mar. 17, 2003) .......................................5

Order Denying Petition for Rehearing, *Petition filed by the Independent Payphone Association of New York, Inc. that the Commission Modify New York Telephone Company's Wholesale Payphone Service Rates and Award Refunds*, Case 99-C-1684, and *Proceeding on Motion of the Commission to Review Regulation of Coin Telephone Services Under Revised Federal Regulations Adopted Pursuant to the Telecommunications Act of 1996*, Case 96-C-1174 (N.Y. Pub. Serv. Comm'n Sept. 21, 2001) .................................5

Order Denying Petition for Rehearing and/or Reconsideration, Denying Complaint and Denying Motion to Re-open Case 03-C-0596, *Petition of Independent Payphone Association of N.Y., Inc. and Individual Independent Payphone Providers to Initiate Remand Proceeding*, Case 15-C-0029 (N.Y. Pub. Serv. Comm'n Dec. 14, 2017) ("*2017 NYPSC Remand Rehearing Order*"). ...........................................................................7

Order on Remand Denying Refunds, *Petition of Independent Payphone Association of N.Y., Inc. and Individual Independent Payphone Providers to Initiate Remand Proceeding*, Case 15-C-0029, at 1 (N.Y. Pub. Serv. Comm'n Mar. 13, 2017) ("*2017 NYPSC Remand Order*")...................................6

Order Resolving Complaints and Inviting Comments Regarding Public Access Line Rates, *Complaints of Phone Management Enterprises, Inc. and Other Pay Telephone Operators* and *of American Payphone Communications, Inc.*, Cases 03-C-0428 & 03-C-0519 (N.Y. Pub. Serv. Comm'n June 30, 2006).......................................................................................6

Procedural Ruling, *Complaint of Phone Management Enterprises, Inc. and Other Pay Telephone Operators Against Verizon New York, Inc. for Refunds Relating to Unlawful Underlying Payphone Service Rates*, Case 03-C-0428, and *Complaint Against American Payphone Communications Inc. Against Verizon New York Inc. Concerning Alleged Refunds Relating to Unlawful Underlying Payphone Service Rates*, Case 03-C-0519 (N.Y. Pub. Serv. Comm'n Jan. 14, 2005).................................................................5

## OTHER MATERIALS

Amended Objections, *In re Best Payphones, Inc*., Case No. 01-B-15472, ECF No. 591 (Bankr. S.D.N.Y. Nov. 8, 2006) ..............................................................17

Complaint, *Best Payphones, Inc. v. Verizon New York, Inc. et al.*, 1:21-cv-11027, ECF No. 1 (S.D.N.Y. filed Dec. 23, 2021) ..........................................................8

Letter Request for Reconsideration, *Best Payphones, Inc. v. Verizon*, Case 03-C-0596 (N.Y. Pub. Serv. Comm'n filed July 12, 2017).......................................7

Order, *In re Best Payphones, Inc*., Case No. 01-B-15472, ECF No. 750 (Bankr. S.D.N.Y. Nov. 26, 2007) ............................................................................10, 17

**INTRODUCTION**

The Court should sanction plaintiffs.  Even a cursory review of the complaint reveals that their damages claims against Verizon New York Inc. ("Verizon") are all time barred.  Plaintiffs complain about rates for payphone services that they paid more than 17 years ago (and in some cases more than 25 years ago).  The New York Public Service Commission ("NYPSC"), the Federal Communications Commission ("FCC"), and federal and New York state courts have repeatedly rejected challenges to those rates.  But even if those rates were unlawful as plaintiffs claim, their damages claims accrued when the rates were charged, and no later than 2006.  The longest statute of limitations applicable to any claim plaintiffs have pleaded is six years.  That plaintiffs' claims are time barred is, therefore, clear on the face of the complaint.  And there are no plausible arguments otherwise, as multiple courts have rejected efforts to bring belated damages claims based on payphone service rates.

Equally sanctionable is plaintiffs' contention, *see* Compl. ¶ 18, that the court should stay proceedings because plaintiffs (after filing this complaint) filed a new petition for declaratory ruling with the FCC that, they assert, could result in rulings supporting their claims here against Verizon and Manhattan Telecommunications Corporation d/b/a MetTel ("MetTel").  *First*, plaintiffs are wrong:  nothing the FCC could do would revive their time-barred claims.  *Second*, even if future favorable FCC (and, possibly, NYPSC) rulings could be the predicate for plaintiffs' claims against Verizon and MetTel to accrue, they must wait to file their claims until those rulings happen — if they ever do.  It is frivolous for plaintiffs to file unripe claims now.

Rule 11 sanctions are appropriate.  Plaintiffs have been complaining about the payphone service rates they paid for two decades or more and have lost at every turn.  They now come to federal court seeking yet another bite at the apple.  But it is well past time for this long-running litigation to end.  Plaintiffs were given the opportunity to withdraw their complaint but have

1

refused to do so.  Plaintiffs' actions show that this baseless litigation will not end unless and until they face consequences.  Accordingly, defendants urge the Court to impose sanctions under Rule 11 and compensate defendants for the attorney's fees and other expenses incurred in responding to the frivolous complaint.

## BACKGROUND

### A.      The Parties and Services at Issue

Plaintiffs Best Payphones, Inc. ("Best") and Northeastern Telecom, Inc. ("Northeastern") are independent payphone service providers ("PSPs") who operated payphones in New York City.  *See* Compl. ¶¶ 23, 25.  Plaintiff Paramount Financial Recovery, LLC ("Paramount") is the assignee of claims held by another independent PSP, Teleplex Coin Communications, Inc. ("TCC").  *See id.* ¶ 26.

To provide public payphone service, independent PSPs purchase access services from local exchange carriers to "connect their payphones to the local telecommunications network and, through that local network, the national and international telephone networks."  *Id.* ¶ 8. From April 15, 1997 through August 30, 2006 (the "Damage Period"), Northeastern and TCC purchased payphone access service from Verizon.  *See id.* ¶¶ 1, 25, 27.  Best also purchased payphone access service from Verizon from April 15, 1997 through December 1998.  *Id.* ¶ 23. Then, from 1999 "until about 2000," Best purchased these services from MetTel.  *Id.*[1]  Best ceased operations in 2003.  *See id.* ¶ 24.

---

[1] Best also alleges that it purchased payphone services during that period from North American Telecommunications ("Natelco"), alleging further (on information and belief) that "MetTel acquired and succeeded to all the rights and obligations Natelco had under its contracts with Best."  Compl. ¶¶ 23-24.

The FCC and NYPSC regulate the rates that telecommunications providers like Verizon may charge independent PSPs.  Plaintiffs allege that Verizon's rates during the Damage Period were higher than those the FCC's regulations permitted.  *See id.* ¶¶ 14, 16.  Plaintiffs' allegations concern only Verizon's payphone access service rates from April 15, 1997 through August 30, 2006.  Plaintiffs admit that, as of 2006, Verizon's rates complied with applicable federal regulations.  *See id.* ¶ 89.

In addition, Best alleges that, under a contract, MetTel charged Best "an amount equal to what Verizon charged its PSP customers [payphone access service] less a discount of 25%."  *Id.* ¶ 93.  Accordingly, Best alleges that, if "Verizon's rates were too high, MetTel will owe Best damages equal to 25% of the difference between the . . . rate Verizon should have charged its PSP customers and the unlawfully high rates it charged during the Damage Period."  *Id.* ¶ 94.

## B.    The Telecommunications Act of 1996 and the FCC's Payphone Orders

Independent PSPs offer payphone services that compete with those provided by former "Bell Operating Companies," such as Verizon.  *See id.* ¶ 8.  In the Telecommunications Act of 1996, Congress added a provision to the federal Communications Act prohibiting Bell Operating Companies from discriminating against independent PSPs in favor of their own affiliated payphone operations.  *See* 47 U.S.C. § 276(a)(2).  Congress also required the FCC to adopt regulations implementing that prohibition.  *See id.* § 276(b)(1)(C).

Later that year, the FCC issued orders implementing Section 276.[2]  Those orders required Bell Operating Companies to offer the telephone lines that PSPs use to provide payphone service

---

[2] *See* Report and Order, *Implementation of the Pay Telephone Reclassification and Compensation Provisions of the Telecommunications Act of 1996*, 11 FCC Rcd 20541 (1996); Order on Reconsideration, *Implementation of the Pay Telephone Reclassification and Compensation Provisions of the Telecommunications Act of 1996*, 11 FCC Rcd 21233 (1996) ("*1996 Reconsideration Order*").

at tariffed rates that complied with the FCC's "new services test" or "NST." This test requires the rate to "be based on the actual cost of providing the service, plus a reasonable amount of the service provider's overhead costs." *Davel Commc'ns, Inc. v. Qwest Corp.*, 460 F.3d 1075, 1081 (9th Cir. 2006). The FCC directed Bell Operating Companies to file tariffs containing NST-compliant rates with state regulatory commissions by January 15, 1997, with the rates to become effective no later than April 15, 1997. *See 1996 Reconsideration Order* ¶ 163.

The FCC later extended the deadline to file those tariffs with NST-compliant rates to May 19, 1997.[3] Bell Operating Companies relying on this extension were required to "reimburse their customers or provide credit, from April 15, 1997, in situations where the newly tariffed rates [were] lower than the existing tariffed rates." *Waiver Order* ¶ 20; *see id.* ¶ 25. But this obligation applied only to the extent a Bell Operating Company filed new tariffs, as opposed to submitting new cost studies to show that existing tariffed rates complied with the NST. *See 1996 Reconsideration Order* ¶ 163.

### C.    Prior Challenges to Verizon's Payphone Rates

Verizon did not change its payphone access service rates following the FCC's orders; instead, Verizon submitted evidence to the NYPSC demonstrating that its existing rates were NST-compliant. *See* Compl. ¶¶ 86-87. The NYPSC has rejected challenges to Verizon's rates four separate times.

***The First Set of New York Proceedings.*** The NYPSC first invited comments on Verizon's rates in 1997. *See id.* ¶ 86. Two years later, in 1999, the Independent Payphone Association of New York ("IPANY") — a trade association of independent PSPs including Best,

---

[3] *See* Order, *Implementation of the Pay Telephone Reclassification and Compensation Provisions of the Telecommunications Act of 1996*, 12 FCC Rcd 21370, ¶ 2 (1997) ("*Waiver Order*").

Northeastern, and TCC — "filed objections to Verizon's tariffs on the basis that the rates were not NST-compliant." *Id*. The NYPSC overruled IPANY's objection in 2000, *see id*. ¶ 88, and denied IPANY's rehearing petition in 2001.[4]

IPANY then sought state court review of the NYPSC's decision. *See* Compl. ¶ 88. The trial court rejected most of IPANY's challenges, but remanded for the NYPSC to determine whether Verizon's rates complied with one aspect of the FCC's NST and, if not, whether Verizon should be required to pay any refunds. *Id*. The appellate court largely affirmed, but found that PSPs would not be entitled to refunds even if the NYPSC found on remand that Verizon's rates should have been lower. *See Payphone Ass'n of New York, Inc. v. Pub. Serv. Comm'n of State of New York*, 5 A.D.3d 960, 964 (3d Dep't 2004).

While IPANY's appeal was pending in 2003, several PSPs, including TCC, filed complaints with the NYPSC again challenging Verizon's rates and demanding refunds.[5] The NYPSC consolidated these complaints with a "related" complaint that Best had filed also challenging Verizon's rates.[6] In a 2006 order, the NYPSC set new rates for Verizon, which took

---

[4] *See* Order Denying Petition for Rehearing, *Petition filed by the Independent Payphone Association of New York, Inc. that the Commission Modify New York Telephone Company's Wholesale Payphone Service Rates and Award Refunds*, Case 99-C-1684, and *Proceeding on Motion of the Commission to Review Regulation of Coin Telephone Services Under Revised Federal Regulations Adopted Pursuant to the Telecommunications Act of 1996*, Case 96-C-1174 (N.Y. Pub. Serv. Comm'n Sept. 21, 2001).

[5] *See* Formal Complaint, *Formal Complaint of Phone Management Enterprises, Inc. and Other Pay Telephone Operators Against Verizon New York for Refunds Relating to Unlawful Underlying Payphone Service Rates*, Case 03-C-0428 (filed N.Y. Pub. Serv. Comm'n Mar. 17, 2003).

[6] Procedural Ruling, *Complaint of Phone Management Enterprises, Inc. and Other Pay Telephone Operators Against Verizon New York, Inc. for Refunds Relating to Unlawful Underlying Payphone Service Rates*, Case 03-C-0428, and *Complaint Against American Payphone Communications Inc. Against Verizon New York Inc. Concerning Alleged Refunds Relating to Unlawful Underlying Payphone Service Rates*, Case 03-C-0519, at 2 n.2 (N.Y. Pub. Serv. Comm'n Jan. 14, 2005).

effect prospectively.  *See* Compl. ¶¶ 89-90.  In doing so, it stated that, "[i]nasmuch as a range of possible rates could comply with the NST, our order does not constitute a finding that current rates [*i.e.*, those in effect since 1997] fail to comply."[7]  Plaintiffs admit that Verizon's rates after August 2006 complied with the NST.  *See* Compl. ¶ 90.

    ***IPANY's FCC Petition.***  In December 2004, IPANY petitioned the FCC to issue a declaratory ruling preempting the NYPSC and New York court decisions that had denied refunds to the PSPs.  The FCC denied that petition.[8]  It found that state commissions, including the NYPSC, had "followed the [FCC's] orders," noting that "each state commission analyzed whether refunds were appropriate, and determined, for different reasons, that they were not." *FCC Declaratory Ruling* ¶ 40.  The D.C. Circuit upheld the FCC's determination.  *See Illinois Pub. Telecomms. Ass'n v. FCC*, 752 F.3d 1018, 1024-25 (D.C. Cir. 2014).

    ***The Second Set of New York Proceedings.***  In January 2015, IPANY and individual PSPs again petitioned the NYPSC to determine whether Verizon's pre-2006 rates complied with the NST.[9]  In a March 2017 order, the NYPSC found once again that Verizon's rates were based on forward-looking costs plus a federal charge and so complied with the FCC's NST.  *See 2017 NYPSC Remand Order* at 23.

---

    [7] Order Resolving Complaints and Inviting Comments Regarding Public Access Line Rates, *Complaints of Phone Management Enterprises, Inc. and Other Pay Telephone Operators* and *of American Payphone Communications, Inc.*, Cases 03-C-0428 & 03-C-0519, at 3 (N.Y. Pub. Serv. Comm'n June 30, 2006).

    [8] *See* Declaratory Ruling and Order, *Implementation of the Pay Telephone Reclassification and Compensation Provisions of the Telecommunications Act of 1996*, 28 FCC Rcd 2615 (2013) ("*FCC Declaratory Ruling*").

    [9] *See* Order on Remand Denying Refunds, *Petition of Independent Payphone Association of N.Y., Inc. and Individual Independent Payphone Providers to Initiate Remand Proceeding*, Case 15-C-0029, at 1 (N.Y. Pub. Serv. Comm'n Mar. 13, 2017) ("*2017 NYPSC Remand Order*").

IPANY and the individual PSPs petitioned for rehearing.[10]  Best submitted a letter requesting, among other things, to join the rehearing petition.[11]  In a December 2017 order, the NYPSC denied IPANY's rehearing petition.  *See 2017 NYPSC Remand Rehearing Order* at 1. The NYPSC treated Best as an intervenor in the proceeding, but declined to reopen Best's 2003 complaint and denied a new complaint that Best had filed.  *See id.* at 27; *see also* Compl. ¶ 88. IPANY again sought state court review.  In addition, Best commenced three separate state court proceedings challenging the same orders and the NYPSC's decision closing Best's 2003 complaint.  The New York Supreme Court joined those proceedings and dismissed them all.  *See In re Best Payphone, Inc. v. Pub. Serv. Comm'n*, 2019 WL 11276711, at *7 (N.Y. Sup. Ct., Albany Cnty. July 24, 2019).

The appellate court again affirmed.  It found that "res judicata and collateral estoppel" barred IPANY "from relitigating . . . whether it was entitled to a refund."  *Best Payphones, Inc. v. Pub. Serv. Comm'n*, 192 A.D.3d 1416, 1420 (3d Dep't 2021).  As to Best, the appellate court found that, even assuming those same principles did not bar Best's challenges, "stare decisis and . . . the absence of any compelling grounds" supported adhering to its 2004 decision.  *Id.* at 1421.  The court also rejected "Best's assertion that it had a property interest in its claim for a refund," citing the *FCC Declaratory Ruling*, which held "that issuing refunds was a discretionary matter for state public commissions."  *Id.*

---

[10] *See* Order Denying Petition for Rehearing and/or Reconsideration, Denying Complaint and Denying Motion to Re-open Case 03-C-0596, *Petition of Independent Payphone Association of N.Y., Inc. and Individual Independent Payphone Providers to Initiate Remand Proceeding*, Case 15-C-0029, at 8-9 (N.Y. Pub. Serv. Comm'n Dec. 14, 2017) ("*2017 NYPSC Remand Rehearing Order*").

[11] Letter Request for Reconsideration, *Best Payphones, Inc. v. Verizon*, Case 03-C-0596 (N.Y. Pub. Serv. Comm'n filed July 12, 2017).

The PSPs then sought and were denied review in the New York Court of Appeals.  *See Best Payphones, Inc. v. Pub. Serv. Comm'n*, 37 N.Y.3d 914 (2021).  The PSPs — including Best, both on its own behalf and as assignee of TCC, and Northeastern — filed a petition for certiorari with the United States Supreme Court, which was likewise denied.  *See Best Payphones, Inc. v. Pub. Serv. Comm'n*, 142 S. Ct. 2815 (2022).

**Best's Prior Federal Court Complaint.**  Before filing that certiorari petition, Best had filed a complaint in this District against Verizon and the NYPSC, asking the court to overturn the NYPSC and New York state court decisions.  *See* Complaint, *Best Payphones, Inc. v. Verizon New York, Inc. et al.*, 1:21-cv-11027, ECF No. 1 (S.D.N.Y. filed Dec. 23, 2021).  After Verizon's counsel informed Best's counsel that the complaint was frivolous, *see* Letter from S. Angstreich to D. Bolton (Jan. 12, 2022) (Ex. E), the parties stipulated to dismissal of that case without prejudice, *see Best Payphones, Inc. v. Verizon New York, Inc. et al.*, 1:21-cv-11027, ECF No. 10 (S.D.N.Y. Mar. 14, 2022).

### D.    Plaintiffs File This Lawsuit

Plaintiffs filed this lawsuit on June 13, 2023, seeking damages based on Verizon's alleged failure to charge NST-compliant rates between 1997 and 2006, and MetTel's charging rates based on Verizon's rates from 1999 to 2000.  *See, e.g.*, Compl. ¶¶ 14, 17, 23.  Plaintiffs acknowledge that the NYPSC and New York courts have already found that Verizon's rates were NST-compliant, but allege that they "are filing a petition with the FCC to reverse those decisions, and establish the NST-compliant rate for payphone services in New York from April 15, 1997 to the date NST-compliant rates were adopted in 2006."  *Id.* ¶ 88.  Plaintiffs did not file that petition until October 17, 2023.

Plaintiffs allege 13 claims for damages against Verizon under the Communications Act (Counts 1-4), the Sherman Antitrust Act (Count 5), and New York state law (Counts 6-13).  Best also alleges one claim for damages against MetTel for breach of contract (Count 14[12]).

On June 21, 2023, Verizon's counsel sent plaintiffs' counsel a letter explaining why each of the claims alleged against Verizon in the complaint is time-barred and, therefore, frivolous. *See* Letter from S. Angstreich to R. Gaines (June 21, 2023) (Ex. B).  The letter further stated that Verizon would seek sanctions if plaintiffs did not withdraw the complaint.  *See id.*  Plaintiffs' counsel responded by email, alluding to "court decisions specifically involving Best Payphones holding that claims based on Best being charged an unlawfully high payphone rate are not ripe and will not be ripe until the payphone rates charged during the period subsequent to April 15, 1997 are determined to be higher than the lawful rates that should have been charged."  Email from R. Gaines to S. Angstreich (July 31, 2023) (Ex. C).

Verizon's counsel responded that they could not locate any such case involving Best, and that the only cases addressing this issue have found that a damages claim accrues when the PSP is on inquiry notice.  *See* Email from S. Angstreich to R. Gaines (Aug. 7, 2023) (Ex. C)*.* Verizon's counsel further explained that, if plaintiffs' claims have not yet accrued, "the current complaint still must be dismissed for lack of standing as unripe, and persisting with it is sanctionable."  *Id.*  Rather than withdrawing the complaint, plaintiffs' counsel asked Verizon's and MetTel's counsel to accept service of it (each agreed to waive service).

Verizon and MetTel served this motion on plaintiffs' counsel on October 5, 2023.  *See* Fed. R. Civ. P. 11(c)(2) (a court may not grant a motion for sanctions if the moving party fails to

---

[12] The complaint refers to this as Count 1 against MetTel.  To avoid confusion with Count 1 against Verizon, we refer to it as Count 14.

serve the motion on the other party at least 21 days before filing it with the court); Letter from S. Angstreich to R. Gaines (Oct. 5, 2023) (Ex. A).  Plaintiffs' counsel did not respond substantively to the motion until October 27, 2023.  Counsel stated that he would not withdraw the complaint and indicated that the court decision to which he previously referred was an unpublished, two-page ruling from bankruptcy proceedings involving Best and a setoff claim it brought against MetTel, which the court concluded was not ripe.  Email from R. Gaines to S. Angstreich et al. (Oct. 27, 2023) (Ex. D) (citing Order, *In re Best Payphones, Inc*., Case No. 01-B-15472, ECF No. 750 (Bankr. S.D.N.Y. Nov. 26, 2007) ("Best Bankruptcy Order"), https://bit.ly/49aj4TX).

Because 21 days have elapsed since defendants served the motion for sanctions and plaintiffs have refused to withdraw the complaint, defendants are filing this sanctions motion concurrently with their motion to dismiss.

## STANDARD OF REVIEW

Rule 11(b) provides that, any time an attorney "present[s] to the court a pleading, written motion, or other paper," the attorney certifies that, "after an inquiry reasonable under the circumstances," "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law."  Fed. R. Civ. P. 11(b).  Rule 11 exists "to protect defendants and the court from wasteful, frivolous and harassing lawsuits, and provides for sanctions in the event of violation in order to deter the bringing of such frivolous suits."  *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 660 (S.D.N.Y. 1996), *aff'd*, 113 F.3d 1229 (2d Cir. 1997).

To determine whether an attorney's inquiry was reasonable under the circumstances, courts use an objective test.  *See*, *e.g.*, *Edmonds v. Seavey*, 2009 WL 4404815, at *2 (S.D.N.Y. Dec. 2, 2009).  "[I]f it is clear that the action was 'destined to fail based on the facts and existing

precedent, and where no reasonable argument could be advanced to change or extend the present law,' Rule 11 sanctions are appropriate." *Id.*

## ARGUMENT

For more than 20 years, plaintiffs have sought damages based on their contention that the payphone rates Verizon charged between 1997 and 2006 did not comply with FCC regulations. Despite repeatedly losing that claim in administrative and court proceedings, plaintiffs are now reprising those claims in federal court. But even a cursory inquiry shows that plaintiffs' claims against Verizon are time-barred by the applicable statutes of limitations.

Plaintiffs' only response thus far has been to assert that an unpublished bankruptcy court decision supports their contention that further administrative agency action is necessary for their claims to accrue. That is wrong. But even if plaintiffs were right, all their claims against both Verizon and MetTel are unripe on their own theory and thus it is frivolous to pursue them in federal court now.

This Court should impose Rule 11 sanctions. An appropriate sanction would compensate defendants for attorney's fees and other expenses incurred in responding to the complaint.

## I.    The Claims Against Verizon Are Time-Barred

The complaint seeks damages for rates that Northeastern and TCC (which assigned its claims to Paramount) paid to Verizon from April 1997 to August 2006, as well as those that Best paid to Verizon in 1997 and 1998. No plaintiff seeks damages based on any rate that it paid in the past 17 years (the past 23 years for Best) — instead, plaintiffs admit that Verizon's rates were lawful as of August 2006. *See* Compl. ¶ 89. Plaintiffs seek to recover damages for these long-ago-billed rates based on a variety of theories. But as to each, the statute of limitations started running years ago and expired long before plaintiffs filed the complaint.

**Counts 1, 2, and 4.**  Counts 1, 2, and 4 plead violations of the Communications Act against Verizon and seek damages under the private right of action in 47 U.S.C. §§ 206-207.  The statute of limitations for such claims is two years.  *See* 47 U.S.C. § 415(b).  A cause of action under this section "accrues on the date of injury, or if the injury is not readily discoverable, at the time the complainant should have discovered it."  *Commc'ns Vending Corp. of Arizona, Inc. v. FCC*, 365 F.3d 1064, 1073 (D.C. Cir. 2004).

Plaintiffs' alleged injury occurred when they paid the allegedly non-NST-compliant rates.  *See id.* at 1074 (finding similar claims by independent PSPs barred by two-year statute of limitations "because the [PSPs] concede[d] that they were aware of [certain] charges and believed them to be unlawful when they were assessed," thus "their cause of action accrued under section 415 when the [local exchange carriers] billed them for th[ose] charges").  Plaintiffs were also on inquiry notice of their claims as early as 1999, when "a trade association of independent PSPs[] filed objections to Verizon's tariffs on the basis that the rates were not NST-compliant."  Compl. ¶ 86.  At the absolute latest, plaintiffs had notice of their claims by August 2006, when the NYPSC adopted the rates plaintiffs concede are NST-compliant.  *See id.* ¶ 89.

All these events are well outside the two-year statute of limitations.  Indeed, in addressing this exact issue — including in a case that plaintiffs' counsel argued on appeal — courts have dismissed as time-barred other PSPs' damages claims based on allegedly non-NST-compliant rates.  *See Nw. Pub. Commc'ns Counsel v. Qwest Corp.*, 2010 WL 4260341, at *7 (D. Or. Oct. 25, 2010) (finding PSP had sufficient "knowledge of its claim as of May 2001 [when it filed a complaint with the Oregon Public Utilities Commission] and at the latest on October 15, 2007 [when it stipulated that rates set by the PUC were NST-compliant]," to trigger the running of the limitations period), *aff'd*, 538 F. App'x 822 (9th Cir. 2013); *Commc'ns Mgmt. Servs., LLC v.*

*Qwest Corp.*, 726 F. App'x 538, 541 (9th Cir. 2018) (PSP's complaint to Oregon Public Utilities Commission regarding payphone service rates "indicated that [PSP] had been sufficiently aware of the pertinent facts to be on inquiry notice of" its claim when filing that complaint and that its "claims accrued again in 2003, when Qwest unilaterally lowered its rates and thus established that the final rates would be lower than the former interim rates").

**Count 3.**  Count 3 pleads that Verizon violated 47 U.S.C. § 276(a) and "[t]he applicable FCC orders" governing payphone rates.  The Communications Act allows a "petition for the enforcement of an order of the Commission for the payment of money" to be filed in federal district court, but that petition must be filed "within one year from the date of the order, and not after."  47 U.S.C. § 415(f).  The FCC issued the orders plaintiffs cite in 1996, 1997, 2000, and 2002.  *See* Compl. ¶¶ 53, 61, 73, 76.  Even if these orders qualify as "order[s] . . . for the payment of money" enforceable under § 415(f),[13] the statute of limitations expired decades ago.

**Count 5.**  Count 5 alleges that Verizon violated federal antitrust law.  *See* 15 U.S.C. § 2. The statute of limitations for this claim is four years.  *See id.* § 15b.  A claim under this section accrues when the plaintiff is on notice of its injury.  *See*, *e.g.*, *Litovich v. Bank of Am. Corp.*, 568 F. Supp. 3d 398, 441 (S.D.N.Y. 2021).  As shown above, plaintiffs were on notice of their claim when IPANY initially complained about Verizon's rates in 1999 and, at the latest, in 2006, when the NYPSC adopted what plaintiffs admit were NST-compliant rates.  *See* Compl. ¶ 89.  Thus, the statute of limitations on this claim expired more than 13 years ago.

**Counts 6, 8, and 12.**  Counts 6, 8, and 12 plead New York common law claims against Verizon for unjust enrichment (Count 6), estoppel (Count 8), and loss of business opportunity

---

[13] *See APCC Servs., Inc. v. Sprint Comm'ncs Co.*, 418 F.3d 1238, 1249 (D.C. Cir. 2005) (holding that FCC orders adopting regulations are not orders for the payment of money), *cert. granted, vacated, and remanded*, 127 S. Ct. 2094 (2007).

(Count 12).  Even assuming such claims could be brought to seek damages based on tariffed rates,[14] the longest statute of limitations applicable to these claims is six years.  *See* N.Y. C.P.L.R. § 213(1) (providing six-year limitations period for "an action for which no limitation is specifically prescribed by law"); *see also Shak v. JPMorgan Chase & Co.*, 156 F. Supp. 3d 462, 479 (S.D.N.Y. 2016) ("unjust enrichment [is] subject to a . . . three-year limitations period where they seek monetary damages.").  Each of these claims accrued when plaintiffs suffered the alleged injury — that is, when Verizon charged them the allegedly non-NST compliant rates.  *See Kaufman v. Cohen*, 307 A.D.2d 113, 128 (1st Dep't 2003) ("a claim for unjust enrichment accrues upon the occurrence of the alleged wrongful act giving rise to restitution"); N.Y. C.P.L.R. § 203(a) ("The time within which an action must be commenced, except as otherwise expressly prescribed, shall be computed from the time the cause of action accrued to the time the claim is interposed.").  Because the last alleged injury to Northeastern and Paramount occurred more than 17 years ago, and the last alleged injury to Best occurred more than 23 years ago, these claims clearly are time-barred.

**Counts 9 and 10.**  Counts 9 and 10 plead fraud claims against Verizon.  The statute of limitations for such claims is six years, and plaintiffs' claims accrued when they were on notice of their claims.  *See* N.Y. C.P.L.R. § 213(8) (providing that "the time within which [an action for fraud] must be commenced shall be the greater of six years from the date the cause of action accrued or two years from the time the plaintiff . . . discovered the fraud, or could with reasonable diligence have discovered it").  As shown above, plaintiffs were on notice as early as

---

[14] The filed-rate doctrine precludes using the common law to challenge tariffed rates. *See*, *e.g.*, *Porr v. NYNEX Corp.*, 230 A.D.2d 564, 576 (2d Dep't 1997) ("[T]here can be no 'unjust enrichment' where a consumer has paid the filed rate.").

1999 and no later than 2006.  Thus, even assuming such a claim could be brought in the context of tariffed rates,[15] the statute of limitations on these claims expired more than 10 years ago.

**Count 11.**  Count 11 alleges that Verizon violated Section 349 of New York's General Business Law.  The statute of limitations on this claim is three years, N.Y. C.P.L.R. § 214(2), and a claim under this section accrues when a plaintiff suffers the alleged injury, *see Corsello v. Verizon New York, Inc.*, 18 N.Y.3d 777, 788-89 (2012).  Again, even assuming such a claim could be brought in the context of tariffed rates,[16] plaintiffs' last alleged injuries occurred more than a decade ago and well outside of the statute of limitations.

**Counts 7 and 13.**  Counts 7 and 13 plead third-party beneficiary and breach of contract claims against Verizon.  The statute of limitations for breach of contract and third-party beneficiary claims is six years.  *See* N.Y. C.P.L.R. § 213(2).  Such claims accrue when a plaintiff suffers the alleged injury.  *See ACE Sec. Corp. v. DB Structured Prods., Inc.*, 25 N.Y.3d 581, 594 (2015) ("New York does not apply the 'discovery' rule to statutes of limitations in contract actions"; "the 'statutory period of limitations begins to run from the time when liability for wrong has arisen'"); *Town of Oyster Bay v. Lizza Indus., Inc.*, 22 N.Y.3d 1024, 1030 (2013) (same for third-party beneficiary claim).  As shown above, plaintiffs' last alleged injuries occurred more than a decade ago.  These claims, too, clearly are time-barred.

## II.   Plaintiffs' FCC Petition Does Not Provide a Basis Under Rule 11 for This Complaint Against Verizon or MetTel

Plaintiffs' counsel has suggested — alluding to "court decisions specifically involving Best" — that plaintiffs' damages claims cannot accrue until a court or regulator determines that

---

[15] *See Porr*, 230 A.D.2d at 576 (there "is no 'fraud' exception to the filed rate doctrine").

[16] *See Porr*, 230 A.D.2d at 576 ("The filed rate doctrine additionally forbids such collateral attacks on the PSC's rate determinations as the instant General Business Law §[] 349 . . . cause[] of action.").

Verizon's payphone service rates were "higher than the lawful rates that should have been charged."  Email from R. Gaines to S. Angstreich (July 31, 2023) (Ex. C).  Plaintiffs also allege that they intend to file "a petition before the FCC to have the FCC remand the issue of the NST-compliant rates back to the [NY]PSC," Compl. ¶ 18, which plaintiffs filed on October 17, 2023.  Neither the bankruptcy court decision plaintiffs' counsel recently cited nor their FCC declaratory ruling petition justifies their frivolous complaint.

*First*, numerous cases (including one in which plaintiffs' counsel argued) have held that it is not necessary for a regulator to find tariffed payphone rates unlawful for a PSP plaintiff's claims to accrue.  *See Nw. Pub. Commc'ns Council*, 2010 WL 4260341, at *7 (rejecting the argument that claims had not accrued because "the PUC had not determined whether Qwest's rates were NST-compliant"); *Nw. Pub. Commc'ns Council*, 538 F. App'x at 823 (explaining that a later-issued administrative decision revising rates would "bear[] only on damages" and does not excuse the "failure to file the [damages] claims earlier"); *Commc'ns Mgmt. Servs., LLC*, 726 F. App'x at 541 (reiterating that the inability to determine the precise amount of any overcharges did not prevent PSPs' claims from being time-barred); *see also Davel*, 460 F.3d at 1092 ("The fact that, until Qwest filed its new fraud protection rates in 2003, Davel was not in a position to determine the precise amount of the overcharges, or even whether the charges were excessive at all, does not change [the applicability of the statute of limitations]."); *Sprint Commc'ns Co. v. FCC*, 76 F.3d 1221, 1227 (D.C. Cir. 1996) (rejecting argument that Sprint had no knowledge of its claim until AT&T filed cost data indicating that the rates charged exceeded lawful levels and holding that Sprint was on notice of the claim as soon as it had knowledge suggesting the rates might be improper).

The only case that plaintiffs have identified as supporting their claims is an unpublished, bankruptcy court decision that found a setoff claim Best filed against MetTel was not ripe.  *See* Best Bankruptcy Order.  There, Best argued that, if a later FCC decision required Verizon to reduce the rates it had charged years earlier, MetTel would then be required to issue refunds to Best because the rates Best paid under its contract were set using a formula based on Verizon's rates.  *See* Amended Objections ¶ 29, *In re Best Payphones, Inc.*, Case No. 01-B-15472, ECF No. 591 (Bankr. S.D.N.Y. Nov. 8, 2006).  The bankruptcy court found that setoff claim — which was not a claim that Best had suffered damages as it was expressly contingent on a future FCC decision[17] — was not ripe.  *See* Best Bankruptcy Order ¶ 2.  That decision says nothing about when plaintiffs' damages claims against Verizon accrued for purposes of the statute of limitations.

*Second*, even if plaintiffs were correct that their claims against both Verizon and MetTel will not accrue until they obtain future favorable administrative rulings, that still would be no defense to this motion.  Any claim based on a petition on which the FCC has not yet acted, is contingent upon "future events that may not occur as anticipated, or indeed may not occur at all." *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 687 (2d Cir. 2013).  As the sole case on which plaintiffs have relied makes clear, such a claim clearly is not ripe.  *See id.*; *see also* Best Bankruptcy Order ¶ 2.  The proper remedy for an unripe claim is dismissal and not, as the complaint requests (¶ 18), to stay the case indefinitely.[18]  *See, e.g.*, *Texas v. United States*, 523

---

[17] In 2013, the FCC issued the ruling Best referenced, rejecting claims that Verizon's rates were too high.  *See FCC Declaratory Ruling* ¶ 40.

[18] "The FCC is not bound to rule on [the] petition before . . . any date certain, and it may choose not to issue a ruling at all."  *Carolyn M. Machonis, O.T., PLLC v. Universal Surv. Ctr., Inc.*, 2020 WL 9815183, at *8 (S.D.N.Y. Feb. 21, 2020) (citing 47 C.F.R. § 1.2 and 5 U.S.C. § 554(3)).  The FCC took more than eight years to rule on the IPANY petition that challenged Verizon's payphone rates in New York.  *See FCC Declaratory Ruling* ¶ 1 n.2.

U.S. 296, 300 (1998) (dismissing unripe claim); *Davis v. Kosinsky*, 217 F. Supp. 3d 706, 709,

713 (S.D.N.Y. 2016) (same), *aff'd*, 689 F. App'x 665 (2d Cir. 2019); *Banyan v. Sikorski*, 2021

WL 1163653, at *5 (S.D.N.Y. Mar. 26, 2021) (same); *N.Y. Civil Liberties Union v. Grandeau*,

528 F.3d 122, 132, 135 (2d Cir. 2008) (same).

### III.    The Court Should Impose Sanctions for Plaintiffs Persisting with This Frivolous Complaint

Plaintiffs have been pursuing the damages claims alleged in the complaint without

success for more than two decades.  Their latest attempt fares no better.  While it, too, would

have been unsuccessful, plaintiffs could (and should) have filed their complaint for damages

decades ago.  Best and the other plaintiffs have refused to dismiss the case voluntarily.  Only

sanctions will put an end to this "wasteful, frivolous and harassing" litigation.  *Katzman*, 167

F.R.D. at 660; *see also Edmonds*, 2009 WL 4404815, at *2.

It is well established that sanctions, while within the court's discretion, are proper in

circumstances like this.  *See*, *e.g.*, *Norris v. Grosvenor Mktg. Ltd.*, 803 F.2d 1281, 1288 (2d Cir.

1986) (remanding to district court for sanctions when it was clear that the claims were time

barred and no reasonable attorney could have determined that claims were justified by existing

law or nonfrivolous arguments); *Sharbat v. Iovance Biotherapeutics, Inc*., 2023 WL 34377, at

*21 (S.D.N.Y. Jan. 4, 2023) ("there are grounds for imposing sanctions where, as here, an

attorney fails to consider a statute of limitations prior to filing a pleading"); *Bar-Mashiah v. Inc.

Vill. of Hewlett Bay Park*, 2019 WL 4247593, at *14 (E.D.N.Y. Sept. 6, 2019) (imposing Rule 11

sanctions because, among other reasons, plaintiff's claims clearly were not ripe).[19]

---

[19] *See also Levy v. Aaron Faber, Inc*., 148 F.R.D. 114, 122-23 (S.D.N.Y. 1993) (imposing sanctions under Rule 11 where plaintiff's claims "were barred by the relevant statutes of limitations"); *de la Fuente v. DCI Telecomms., Inc*., 259 F. Supp. 2d 250, 270 (S.D.N.Y. 2003) (same); *Charles Equip. Energy Sys. v. Innio Waukesha Gas Engines, Inc.*, 2023 WL 2346337, at *5 (S.D.N.Y. Mar. 3, 2023) (same); *Kerchner v. Obama*, 612 F.3d 204, 209-10 (3d Cir. 2010)

The sanctions this Court should award are defendants' attorney's fees and other expenses incurred in responding to the frivolous pleading — "[t]he typical sanction." *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 124, 131 (S.D.N.Y. 1999) (noting "[t]he typical sanction" imposed for a Rule 11 violation is "the payment of the other side's reasonable attorney's fees which were incurred as a result of the improper filing"); *see also* Fed. R. Civ. P. 11(c)(4) (sanctions may include "an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation").  Here, those amounts include not only the fees and expenses incurred in bringing this sanctions motion, but also those incurred in filing the motion to dismiss the complaint.

## CONCLUSION

This Court should impose Rule 11 sanctions of the attorney's fees and costs defendants incurred in responding to this frivolous complaint.

---

(ordering attorney to show cause why he should not be sanctioned for bringing appeal where his clients obviously lacked standing); *King v. Whitmer*, 71 F.4th 511, 528, 530 (6th Cir. 2023) (affirming Rule 11 sanctions against plaintiffs in part for asserting claims they clearly lacked standing to bring).

October 30, 2023

Respectfully submitted,

/s/ Peter Jakab
Peter Jakab
FEIN & JAKAB
40 Fulton Street • 17th Floor
New York, NY 10038
(212) 732-9290
(212) 227-6479 (fax)
pjakab@earthlink.net

*Counsel for Defendant Manhattan*
*Telecommunications Corporation*
*d/b/a MetTel*

/s/ Scott H. Angstreich
Scott H. Angstreich (admitted *pro hac vice*)
Bethan R. Jones (admitted *pro hac vice*)
KELLOGG, HANSEN, TODD,
   FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900
(202) 326-7999 (fax)
sangstreich@kellogghansen.com
bjones@kellogghansen.com

John Moore
SCHLAM STONE & DOLAN LLP
26 Broadway
New York, NY 10004
(212) 612-0667
(212) 344-7677 (fax)
jmoore@schlamstone.com

*Counsel for Defendant Verizon New York Inc.*